Application of Don C. LAW.
Patent Appeal No. 6801.

United States Court of Customs
and Patent Appeals.
June 8, 1962.

Learman, Learman & McCulloch, John K. McCulloch, Saginaw, Mich., for appellant.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for the Commissioner of Patents.

Before RICH, Acting Chief Judge, and MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

*\* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.*

SMITH, Judge.

This appeal is from an affirmance by the Patent Office Board of Appeals of the examiner's rejection of claims 12, 14, 15 and 16 of appellant's application Ser. No. 404,113, filed January 14, 1954 for an improvement in a "Dockboard."

The term "dockboard" is a term commonly used in the trade to identify a portable loading ramp which is used to bridge the space between a loading dock and a carrier, such for example, as a truck or railroad car to facilitate the transfer of goods from the loading dock to the carrier or vice versa. It is common practice to utilize what are hereinafter referred to as "loading vehicles" which may be hand trucks, dollies or power vehicles such as fork lift trucks. Such loading vehicles are moved over the dockboard between the loading dock and the carrier. In order to strengthen the dockboard and to prevent the loading vehicle running off either edge of the dockboard, side guard rails or curbs are provided on the dockboard. Loading vehicles normally used in loading and unloading cargo frequently are provided with rubber tired metal wheels.

The problem which appellant alleges to have confronted him was that of designing a dockboard having side curbs which were so constructed as to serve the dual functions of strengthening the dockboard and preventing the wheels of the loading vehicle from running off either side of the dockboard, and yet being so constructed as not to be damaged by contact with the metal rim portions of the wheels of the loading vehicle. Appellant claims to have solved the problem by constructing the guard rails or curbs of his dockboard in such manner that each has a relatively low substantially vertical inner wall and a higher outer vertical wall. The height of the inner wall is such that it is less than the dis-

tance between the surface of the dockboard and the metal wheel rims of the loading vehicle. Appellant thus avoids contact between the inner wall of the curbs and the metal wheel rims of the loading vehicle. Appellant points out that such a low inner wall will furnish but slight protection against the possibility of running a wheel of the loading vehicle over this wall and off the edge of the dockboard. To provide the required protection against such running off the dockboard, appellant provides an inclined portion which slopes upwardly from the upper edge of the lower inner wall to the higher edge of the outer wall.

Appellant asserts that guard rails or curbs so constructed perform the required safety functions while avoiding damage due to contact which otherwise would occur between the metal wheel rims of the loading vehicles traversing the dockboard. The inclined portion, it is asserted, does not contact the rims even when the vehicle tire is rubbing against the lowered inner wall.

Each end of the curbs is provided with an end section having an arcuate inner surface so that the dockboard curbs are outwardly flared at each end to facilitate positioning of the loading vehicle on the dockboard. The end sections may have hand holds provided therein or the curbs themselves may be formed with extending lips which will facilitate manual handling of the dockboard.

Appealed claim 12 is as follows:

"A dockboard construction adapted to bridge a gap between a loading dock and a carrier to be loaded or unloaded at said dock and over which a vehicle having rubber tires mounted on metal wheel rims may carry goods to or from said carrier, said dockboard construction comprising a floorplate having a width between its two side edges to accommodate said vehicle, and a curb rail fixed to said floorplate at each of the side edges of the latter, each of said curb rails comprising an outer wall ex-tending above said floorplate and located substantially flush with the associated side edge of the latter, an inner wall substantially parallel with said outer wall and spaced therefrom, *said inner wall extending above said floorplate a distance substantially less than said outer wall and being of less height than the height of the wheel rims of said vehicle above said floorplate when said vehicle is supported on said floorplate, and a wall joined to said inner wall adjacent to the upper edge of the latter and having a substantially flat exposed surface sloping upwardly from its juncture with said inner wall in a direction towards said outer wall, said outer wall and said sloping wall being joined to one another at the upper edge of said outer wall.*" [Emphasis added.]

As expressed in the foregoing emphasized portion of claim 12, appellant's asserted invention appears to lie in the requirement that each curb of the dockboard has an inner vertical wall of less height than the "height of the wheel rims" of the loading vehicle which traverses the dockboard. Each curb also has an inclined wall sloping upwardly and away from the inner wall and merging with the outer wall.

Rejected claim 14 depends on claim 12 and further includes the end curb sections fixed at each end of each curb rail and describes the inner wall of each of the end crib sections as curving "towards its outer wall in a direction towards the adjacent end of said floorplate." Claim 15 depends on claim 14 and further includes openings at each of the ends of the curb rails and wherein "the end of each end curb section adjacent to an end of said curb rail is equipped with a projection snugly received in the opening of the adjacent curb rail end." Claim 16 includes the subject matter of claims 12, 14, and 15, but in addition, calls for the provision of hand holds formed by openings provided in the end curb sections.

The references relied upon by the examiner and by the board in rejecting the claims on appeal are as follows:

| Higgins | 1,726,267 | Aug. 27, 1929 |
|---------|-----------|----------------|
| Daniels | 2,496,445 | Feb. 7, 1950 |
| Mitchell (Br.) | 513,358 | Oct. 10, 1939 |

The sole issue to be decided in this appeal is whether the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time appellant made his invention to a person having ordinary skill in the art. 35 U.S.C. § 103.

It is apparent from a consideration of the cited references that appellant's alleged invention is in a crowded art. At most, it is but an improvement in design over the Daniels reference which is considerd to be a principal reference and which discloses a dockboard comprising a floorplate to which a guard rail or curb is welded along each of the side edges of the floorplate. The guard rails each consist of an extruded shape and cast end portions. A cross-sectional view of the guard rail shown in Daniels discloses an inner vertical wall which corresponds to appellant's inner vertical wall and which is of less height than the outer vertical wall. The inner and outer walls are joined by a rounded intermediate portion. The over-all height of the Daniels guard rail is such that the body of a maneuvering truck will clear it. The curved portion is so made as stated by Daniels to avoid "a sharp corner on the inner side of the rail which could be readily nicked."

Daniels also discloses that the cast ends of the guard rail are curved outwardly and downwardly and that each end section also has hand holes.

The British patent to Mitchell, for "Reflective Surfaces for Roadside Kerbs and the like," discloses a variety of curb shapes. Curbs having cross-sectional configurations generally similar to the cross-sectional configuration of appellant's curbs are illustrated. Each comprises an outer vertical wall connected to a shorter inner vertical wall by an inclined portion which slopes upwardly and outwardly from the inner vertical wall.

The Higgins patent discloses a center guide rail for highways comprising a number of elements, generally triangularly shaped in cross-section, joined one to another and terminating in rounded end sections.

Claim 12 was rejected as being obvious over Daniels in view of Mitchell *or* Higgins. Claims 14 through 16 were rejected on Daniels in view of Mitchell *and* Higgins.

All claims on appeal recite the height of the inner vertical wall of appellant's curb rail in terms of the height of a projecting wheel rim above the floorplate, i. e., in terms of comparison with another structure. Such limitation is at best of questionable definiteness. The examiner correctly stated:

"Applicant attempts to relate the height of his inner wall to the height of a truck wheel rim. Such height is somewhat nebulous. The wheel rim forms no part of the dockboard and may vary in size. * * * In Daniels the inclined surface 23 probably is of such height as to clear the hub of the wheel. Obviously, if it is desired to clear the rim of the wheel the inside curb wall 22 would be lowered."

Neither Daniels nor appellant has disclosed any dimensions or ranges of dimensions for their respective inner vertical curb walls. No dimensions or ranges of dimensions are disclosed for the wheel rim height referred to in appellant's specification. Thus, the height of appellant's inner vertical wall is not so disclosed that it can be clearly distinguished from the height of the inner vertical wall of Daniels. A limitation so expressed is of doubtful significance in distinguishing the invention over the disclosures of the prior art.

Assuming that a person of ordinary skill in this art encountered uses of Daniels' dockboard with loading trucks which

have wheel-rims which would hit and damage the Daniels' curb, we think it would be obvious to such person that the inner wall portion of the Daniels' curb should be lowered.

Appellant asserts that Daniels' objectives include reinforcement against bending and that the attainment of Daniel's objectives is directly related to the height and thickness of the curbs. When appellant lowers the equivalent of the inner wall portion of Daniels to provide additional clearance, he also decreases the effectiveness of the curbs in resisting bending moment of the dockboard.

Appellant's claimed modification of Daniels' disclosure, it seems to us, involves at most a matter of choice between 1) sacrificing reinforcement and wheel curbing capacity in exchange for wheel rim clearance, and 2) retaining the reinforcement and wheel curbing capacity of the curb as is done by Daniels with what appellant asserts is the greater risk of gouging resulting from interference between the Daniels curbs and the wheels having projecting rims used on at least some of the loading vehicles. Such a choice between these design alternatives would, it seems to us, have been obvious to a person of ordinary skill in this art.

Appellant urges that the reference in Daniels to the gouging or chipping of the curbs should be considered as an admission by Daniels that this was a long standing problem in the dockboard art. Other than this reference in Daniels, there is no evidence here that this was in fact a significant and long standing problem in the art. Furthermore, there is nothing to show that this problem, if it existed, could not be solved by an obvious redesign of the Daniels construction.

For the purpose of showing commercial success of appellant's dockboards, appellant has submitted two affidavits which indicate that for the period 1953 through 1959, almost $4,000,000 worth of "appellant's dockboards" were sold with only $242,500 of advertising costs. All embodiments of appellant's invention disclosed in his application include the bead of allowed claim 13. Thus, assuming the affidavits are a proper showing of commercial success, they do not show commercial success of dockboards covered by the appealed claims which are not limited to the bead of claim 13. Thus, on the face of the record, there is no showing of commercial success which we can properly attribute to the subject matter of the rejected claims. In addition, evidence of commercial success is not controlling where, as here, the alleged invention seems to be clearly obvious in the sense of 35 U.S.C. § 103. In re Busch, 45 CCPA 766, 251 F.2d 617, and cases there cited.

For the foregoing reasons, the decision of the board is affirmed.

Affirmed.

WORLEY, Chief Judge, did not sit or participate in decision.

MARTIN, Judge, sat but did not participate in decision because of illness.